TODD BLANCHE
Acting Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division
JOHNPAUL LECEDRE (Cal. Bar No. 303100)
Assistant United States Attorney
Post-Conviction and Special Litigation Section
     1400 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-4447
     Facsimile: (213) 894-0142
     E-mail:   johnpaul.lecedre@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>               v.<br><br>ESMERALDA GOMEZ, et al,<br><br>   JAVIER HERNANDEZ<br>    aka "Francisco Iniguez" (#3)<br><br>               Defendants. | No. 2:17-cr-00064-CAS-3<br><br>GOVERNMENT'S REQUEST FOR FINDING OF VOLUNTARY ABSENCE; MOTION FOR DECLARATION OF BREACH OF PLEA AGREEMENT; REQUEST FOR REMEDIES<br><br>Date:       May 14, 2026<br>Time:       12:00 PM<br>Location: Courtroom of the Hon.<br>                Christina A. Snyder |

     Plaintiff, UNITED STATES OF AMERICA, by and through its counsel of record, the United States Attorney's Office for the Central District of California and Assistant United States Attorney JohnPaul LeCedre hereby files its Request for Finding of Voluntary Absence; Motion for Declaration of Breach of Plea Agreement; and Request for Remedies as to defendant JAVIER HERNANDEZ ("Defendant").

i

This filing is based upon the attached memorandum of points and authorities, the files and records in this case, and any such further evidence and argument as the Court may permit at the scheduled hearing.

Dated: April 24, 2026          Respectfully submitted,

TODD BLANCHE
Acting Attorney General

BILAL A. ESSAYLI
First Assistant United States
  Attorney

ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division


  /s/ *JohnPaul LeCedre*
JOHNPAUL LECEDRE
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

ii

**TABLE OF CONTENTS**

**I.    INTRODUCTION**...........................................................1

**II.   BACKGROUND**.............................................................**4**

    A.    Defendant's Criminal History and Offense Conduct..........4

    B.    The Plea Agreement and Its Obligations....................5

    C.    Deportation, Parole Authorization, and Non-Appearance.....6

    D.    Defendant's Irreconcilable Accounts.......................7

**III.  DEFENDANT'S ABSENCE WAS VOLUNTARY, AND SENTENCING SHOULD PROCEED IN ABSENTIA**.............................................**9**

    A.    Legal Standard............................................9

    B.    Defendant's Absence Was Voluntary........................10

    C.    Defendant's "Security Narrative" Does Not Defeat Voluntariness............................................11

**IV.   DEFENDANT HAS MATERIALLY BREACHED THE PLEA AGREEMENT**..........**13**

    A.    Non-Appearance (Plea Agreement ¶ 2(d))...................14

    B.    Irreconcilable Untruthfulness (Plea Agreement ¶¶ 2(g) and 2(f))..............................................15

    C.    Fundamental Fairness Requires Relieving the Government of Its Sentencing Commitments............................18

**V.    RELIEF REQUESTED**......................................................**20**

**TABLE OF AUTHORITIES**

**CASES**

United States v. Gaudin, 515 U.S. 506 (1995).......................17

Hays v. Arave, 977 F.2d 475 (9th Cir. 1992)..........................9

Rice v. Wood, 77 F.3d 1138 (9th Cir. 1996)...........................9

United States v. Arrous, 320 F.3d 355 (2d Cir. 2003)............9, 11

United States v. Dalli, 424 F.2d 45 (2d Cir. 1970)..............9, 11

United States v. De la Fuente, 8 F.3d 1333 (9th Cir. 1993).........13

United States v. Gonzalez-Sanchez, 825 F.2d 572 (1st Cir. 1987)....19

United States v. Ornelas, 828 F.3d 1018 (9th Cir. 2016).........9, 11

United States v. Plascencia-Orozco, 852 F.3d 910 (9th Cir. 2017)...17

United States v. Zucker, 161 F.3d 586 (9th Cir. 1998)..........13, 17

**STATUTES**

18 U.S.C. § 1001..............................................3, 6, 15

**RULES**

Federal Rule of Criminal Procedure 43.......................9, 13, 20

**REGULATIONS**

Cal. Bus. & Prof. Code § 6068(m)....................................10

Cal. Rules of Prof. Conduct R. 1.4(a)(3)............................10

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.   INTRODUCTION**

"It's not a question of if he will be deported. He will be deported, and he's aware of that."[1]

Those were the words of defense counsel, spoken in the presence of Defendant Javier Hernandez ("Defendant") at a federal proffer session on March 23, 2022. Defendant had already signed a plea agreement expressly acknowledging the virtual certainty of his removal from the United States – and promising to appear for sentencing anyway. In February of 2026, he gave a statement to the Probation Office minimizing his involvement in the crime and contrary to his 2022 proffer. He knew of his sentencing hearing and had legal authorization to enter the United States to attend it. He chose not to appear.

Defendant now demands that this Court enforce a plea agreement that he openly flouts. Instead, the Court should find that Defendant's failure to appear at his April 16, 2026 sentencing was voluntary, declare a material breach of the Plea Agreement, and permit sentencing to proceed in absentia with the government relieved of its sentencing commitments.

Defendant has spent his entire adult life in the United States unlawfully, and he has spent much of it trafficking methamphetamine: three felony drug trafficking convictions, two weapons convictions, and a documented pattern of giving false identities to law enforcement spanning decades. In 2013, he was convicted of possession of methamphetamine for sale. Two years later – on probation for that

---

[1] Exhibit 1 (lodged recording of March 23, 2022 proffer session) at 9:44.

conviction – he conspired with a Mexican transnational criminal organization to receive and unload more than six kilograms of 100% pure methamphetamine from a hidden compartment in a trap vehicle driven across the U.S.-Mexican border. That is the instant offense. It did not deter him. After his arrest in this very case, he transported over 27 pounds of methamphetamine for sale in San Bernardino County. When officers arrested him in 2019, he gave a false name, slipped his handcuffs, and ran.

In December 2021, facing that record, Defendant pleaded guilty in exchange for sentencing commitments from the government – including a recommendation cap. He promised to appear for all proceedings, to be truthful with the Probation Office and the Court, and not to commit further crimes. He has kept none of those promises.

On April 16, 2026, Defendant did not appear for his own sentencing hearing. At that time, a valid Special Public Benefit Parole ("SPBP") authorization secured his lawful entry into the United States. His own counsel swore to the Court that Defendant had "made the voluntary choice to return to the United States for sentencing," (Dkt. 481 ¶ 4) – a representation this Court relied upon in denying reconsideration of Defendant's motions. (Dkt. 489 at 7.) The Plea Agreement anticipated deportation and carved out no exception to the appearance obligation. (Dkt. 95 ¶ 2(d).) This Court has already resolved the government misconduct question – the motion to dismiss, motion to set aside the plea, and the motion for reconsideration were all denied. (Dkts. 478, 489.) Defendant's deportation was the foreseeable consequence of his own conduct. With every legal barrier removed and every legal challenge exhausted, Defendant chose not to appear.

He will claim that security concerns prevented his appearance. That argument is legally foreclosed and factually self-defeating. While the government was filing cooperating materials under seal to protect Defendant's identity, Defendant was giving a video interview with the Los Angeles Times about his confidential participation in this case. His purported security concerns rest on unsubstantiated, undocumented communications – the kind that appear conveniently when Defendant needs an excuse. He cannot manufacture a security problem through his own public conduct and then invoke it to excuse a court order he finds inconvenient.

The second breach is simpler. In February of 2026, Defendant gave the Probation Office a materially minimized account of his offense conduct. That account is irreconcilable with what he told federal agents under proffer in March of 2022 – with his own counsel in the room. One or both of those accounts is false. Either he lied to the Probation Office, violating Paragraph 2(g) of the Plea Agreement, or he lied to federal agents, violating 18 U.S.C. § 1001 and paragraph 2(f). The government need not resolve which. The dilemma results in breach in either case.

The Plea Agreement provides that all obligations are material and a single breach is sufficient. (Dkt. 95 ¶ 26.) At least two have occurred. A career trafficker who absconds from his own sentencing and tells irreconcilable stories to two arms of the federal government has no claims to a sentencing cap he earned with promises he never intended to honor. The government declares breach on both grounds and requests the relief set forth herein.

3

**II.    BACKGROUND**

The facts of this case have been recounted at length in prior filings, including the government's Trial Memorandum and Revised Sentencing Memorandum. (Dkts. 355, 497.) The following background is limited to facts material to the grounds for breach and the relief requested herein.

**A.    Defendant's Criminal History and Offense Conduct**

Defendant has resided unlawfully in the United States for his entire adult life. (RPSR ¶¶ 67-75.) That tenure has been marked, without meaningful interruption, by a criminal record spanning decades – eight separate convictions on charges ranging from weapons offenses and false identity to three felony drug trafficking cases. The defense has never presented this record in full. In both Defendant's 2022 and 2026 sentencing submissions, (Dkts. 102, 493), filed four years apart by the same counsel, it omits the same offenses and deploys the same characterization: a non-violent addict whose crimes reflect dependency rather than predation. That characterization was always incomplete. The complete record tells a different story.

In 2000, Defendant was convicted of carrying a loaded firearm in a public place – a weapons offense that predates any drug conviction by five years and that the defense did not acknowledge in any filing the government is aware of in this case. (Revised Presentence Report ("RPSR") ¶ 46.) In 2005, he was convicted on four counts, including DUI, being under the influence of a controlled substance, and possession of a switchblade knife – his second weapons-related conviction, also absent from every defense account. (RPSR ¶ 47.) In 2010, he incurred two convictions, felony possession of

methamphetamine, and – omitted entirely from the defense narrative – giving a false identity to a peace officer. (RPSR ¶¶ 50, 51.) That 2010 false identity conviction is the first of three documented instances in which Defendant provided false names to law enforcement across his decades-long criminal career.

Against that backdrop, in 2013, Defendant was arrested and convicted of felony possession of methamphetamine for sale in San Bernardino County – his first serious trafficking conviction. (RPSR ¶ 53.) Two years later, while still subject to probation on that case, he committed the instant offense: conspiring with a Mexican transnational criminal organization to receive and unload more than six kilograms of 100% pure methamphetamine from a purpose-built hidden compartment in a vehicle driven across the border from Mexico. (Dkt. 95 ¶ 12.) After his arrest on this very case, he committed a third, more serious trafficking offense – transporting over 27 pounds of methamphetamine for sale. (RPSR ¶ 53; Dkt. 498, Ex. 2.) When officers arrested him in 2019, he gave a false name, freed himself from handcuffs, and fled. He was later apprehended, convicted, and sentenced to three years in county jail. (Id.)

**B. The Plea Agreement and Its Obligations**

On November 22, 2021, Defendant entered into a written Plea Agreement with the government (Dkt. 95.) He pleaded guilty on December 8, 2021. (Dkt. 99.) In exchange for the government's sentencing commitments, including a cap on its recommendation to the low term of the Sentencing Guidelines Range – Defendant assumed a specific set of obligations. Three are directly at issue here. Paragraph 2(d) required him to "appear for all court appearances, surrender as ordered for service of the sentence, obey all conditions

5

of any bond, and obey any other ongoing court order in this matter." Paragraph 2(f) required him to "not commit any other crime," expressly encompassing violations of 18 U.S.C. § 1001. Paragraph 2(g) required him to "be truthful at all times with the United States Probation Office and the Court." The agreement further provided, under the heading "Breach of Agreement," that "all of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach." (Id. ¶ 26.) The Plea Agreement also expressly acknowledged that Defendant's guilty plea carried immigration consequences including the likelihood of immediate removal. (Id. ¶ 7.) Defendant certainly did not have any express or implied right to remain in the United States indefinitely before his sentencing hearing. No reading of the Plea Agreement could support that interpretation.

**C.    Deportation, Parole Authorization, and Non-Appearance**

Defendant was removed to Mexico on or about March 24, 2025. (RPSR ¶ 64.) His removal was not directed, requested, or facilitated by the prosecution – it was the foreseeable administrative consequence of his unlawful immigration status and lengthy criminal record. This Court has already resolved the defense's allegation of government misconduct with regard to Defendant's removal definitively: his motion to dismiss was denied, the motion to set aside the plea was denied, and the motion for reconsideration was denied as untimely, meritless, and procedurally defective. (Dkts. 478, 489.) Those rulings are final.

The government has acted promptly and with diligence to secure Defendant's lawful return for every prospective appearance. In August of 2025, the government obtained SPBP to allow Defendant to cooperate

at jury trial, timely notifying defense counsel. (Dkt. 341.) Defendant did not return to testify. In October of 2025, the government obtained a second SPBP authorization to allow Defendant's lawful entry at a hearing set for November 24, 2025. Defendant did not enter the United States, and the hearing was ultimately taken off calendar and converted to a hearing on the motions to dismiss and set aside. (Id.) On April 1, 2026, the government transmitted a third SPBP authorization allowing entry at any port 10 days prior to his April 16, 2026 sentencing hearing. (Dkt. 490; see also Dkt. 481, Wallach Decl. ¶ 3, Ex. B.) Defense counsel was ethically obligated to relay both the authorization and sentencing date to his client, (Dkt. 478 at 11 n. 8.), and appears to have done so. On February 3, 2026, counsel went a step further – filing an ex parte application representing to this Court that Defendant had "made the **voluntary** choice to return to the United States for sentencing." (Dkt. 481 at 3, ¶ 4 (emphasis added).) The Court relied upon that representation in denying Defendant's subsequent motion for reconsideration. (Dkt. 489 at 7.) Each unused request for SPBP required significant administrative burden by the government and has attracted increasing scrutiny due to Defendant's apparent unwillingness to reenter the United States. (See Dkt. 508 ("Apr. 16, 2026 Tr."), 19:15-24.)

Defendant did not appear for his sentencing hearing on April 16, 2026.

### D.    Defendant's Irreconcilable Accounts

On March 23, 2022, Defendant voluntarily participated in a proffer session with federal agents and a federal prosecutor. Defense counsel Ian Wallach was present throughout. The audio recording of that session has been lodged with the Court as Exhibit 1. As

7

reflected in that recording and as documented in the DEA Form 6 ("DEA-6") Report of Investigation ("ROI") prepared by the case agent, (Ex. 2), Defendant stated that he contacted and arranged for the use of co-defendant Henry Quijada's ("HQ") garage to ensure the vehicle would be in an isolated location; details regarding his coordination with the codefendants; details regarding his payment for the 2015 incident; and he acknowledged that he suspected law enforcement was following them. (Ex. 1; Ex. 2 ¶¶ 4-6.) Defendant also gave details regarding his involvement in a multi-month methamphetamine trafficking operation that involved 5-6 deliveries. (Ex. 1; Ex. 2 ¶ 9.)

On February 26, 2026 – nearly four years later – Defendant was interviewed via telephone by the United States Probation Office in connection with the RPSR. The account he provided bore no resemblance to the aforementioned proffer. He described himself as a passive participant who "realized it was a drug deal, and continued moving forward." (RPSR ¶ 21.) The garage arrangement, the escorted vehicle, the continuation despite suspected surveillance – none of it appeared. With respect to the 2019 conduct, he described a minor, isolated offense untethered from the sustained trafficking enterprise he described earlier to the case agent.

These two accounts cannot both be true. The government does not presume to offer which is false. It does not need to. The irreconcilability itself is the breach – a point further developed in Section III below.

## III. DEFENDANT'S ABSENCE WAS VOLUNTARY, AND SENTENCING SHOULD PROCEED IN ABSENTIA

### A. Legal Standard

Federal Rule of Criminal Procedure 43(c)(1)(B) provides that a defendant who has entered a guilty plea and "is voluntarily absent" at sentencing may be sentenced in his absence. The inquiry is narrow: did the defendant know of the proceedings, and did he choose not to appear? United States v. Ornelas, 828 F.3d 1018, 1023-24 (9th Cir. 2016) (absence voluntary where defendant knew of the proceedings and chose not to appear). That a defendant may prefer not to appear, or finds appearance inconvenient, or claims to fear returning, does not defeat voluntariness – it confirms it. Sentencing in absentia under these circumstances violates no constitutional right. Hays v. Arave, 977 F.2d 475, 478 (9th Cir. 1992), overruled on other grounds by Rice v. Wood, 77 F.3d 1138 (9th Cir. 1996); Rice v. Wood, 77 F.3d at 1142 (imposition of sentence in defendant's absence not structural error).

The standard is not demanding, nor should it be. A defendant cannot weaponize his own absence to indefinitely forestall a proceeding he agreed to attend. These cases are clear that where a deported defendant has been notified of a lawful pathway to return and fails to use it, his absence is voluntary. United States v. Arrous, 320 F.3d 355, 361 (2d Cir. 2003) (failure to appear or respond to counsel's communications constitutes voluntary absence where a defendant was on notice of the hearing and the availability of parole); United States v. Dalli, 424 F.2d 45, 47 (2d Cir. 1970) (deported defendant who knew of upcoming hearing and knew of requirement to obtain reentry authorization waived his right to appear). The logic is straightforward: once the government removes

every legal barrier to appearance and the defendant still does not come, there is only one remaining explanation: choice.

### B.    Defendant's Absence Was Voluntary.

Every element of voluntary absence is satisfied here, and more.

Defendant has known about these proceedings since the day he pleaded guilty. He has been in contact throughout with his counsel, with the United States Probation Office, and – by counsel's own admission, has been reachable during his time in Mexico. (See, e.g., Apr. 16, 2026 Tr. 7:24-8:2.) The Probation Office interviewed him by telephone as recently as February 26, 2026. (RPSR ¶ 21.) The notion that Defendant was somehow unaware of his April 16, 2026 sentencing date is not seriously advanced, even by his own counsel, who acknowledged in April of 2026 that he did not know whether Defendant would appear – not that Defendant did not know he was supposed to.

The government did not merely notify Defendant of the sentencing date. It secured his lawful pathway to attend: on numerous occasions and for this specific hearing. On April 1, 2026, the government transmitted via email Defendant's SPBP authorization, which allowed his lawful entry into the United States at any port of entry as early as April 6, 2026 – 10 days prior to sentencing. (Dkt. 490.) The Court has already ruled that defense counsel is ethically obligated to relay that information to Defendant. (Dkt. 478 at 11 n.8.; see also Cal. Bus. & Prof. Code § 6068(m); Cal. Rules of Prof. Conduct R. 1.4(a)(3).) And in February of 2026, defense counsel did more than relay it – he filed a sworn declaration representing to the Court that Defendant "has made the voluntary choice to return to the United States for sentencing." (Dkt. 481 at 3, ¶ 4.) The Court later relied

on that representation in its ruling on Defendant's motion for reconsideration. (Dkt. 489 at 7.)

The government went further still. Upon reviewing defense counsel's sentencing submissions and the complaints therein regarding the logistics of Defendant's return, (Dkt. 493 at 9), the undersigned counsel wrote to defense counsel on April 9, 2026, offering the government's assistance with Defendant's transportation to the United States for sentencing,[2] an offer reiterated on the record during the April 16, 2026 hearing. (Apr. 16, 2026 Tr. 5:19-6:1.) The government – the party Defendant accuses of engineering his removal – affirmatively offered to get him back. That offer was not accepted. It was not meaningfully acknowledged. Defendant simply did not appear.

On this record, voluntary absence is not a close question. Defendant knew of the proceedings. He had a lawful means to attend. His own counsel told this Court he intended to come. The government offered to assist with his transportation. He did not appear. Under Rule 43, Ornelas, Arrous, and Dalli, that is clearly voluntary absence. The Court should so find.

### C. Defendant's "Security Narrative" Does Not Defeat Voluntariness

Defendant will no doubt invoke claimed safety concerns as an explanation for his absence. The argument fails on multiple levels – legally, factually, and as a matter of basic consistency.

---

[2] The government's offer of transportation assistance was a courtesy extended in good faith, not an acknowledgement of any legal obligation to facilitate Defendant's return. The government's sole obligation was to provide a legal pathway to appear – which it discharged through SPBP authorization on April 1, 2026. Any logistical arrangement beyond that was Defendant's responsibility to pursue.

11

It fails legally because this Court has already ruled. The motion to dismiss was denied. (Dkt. 478.) The motion for reconsideration was denied. (Dkt. 489.) Each of these rulings addressed and rejected the proposition that circumstances in Mexico created a government-attributable barrier to Defendant's participation in these proceedings. Those rulings are final. Defendant cannot relitigate them through the back door of a voluntariness objection.

It fails factually because the record directly contradicts the narrative. Throughout this litigation, the government scrupulously filed all cooperation-related materials under seal, taking affirmative steps to protect Defendant's identity. Defendant then, on his own accord, gave a video interview to the Los Angeles Times about this case – identifying himself, describing his cooperation, and ensuring his role in the prosecution became public.[3] He is not a man who feared exposure. He is a man who sought it. Having voluntarily placed himself in the public record, he cannot now claim that the resulting attention prevented him from appearing before the Court he chose to address through a newspaper. The specific threat Defendant has invoked consisted of an unsubstantiated, anonymous communication. This "threat," advanced by a defendant who has a long and documented history of lying and who simultaneously gave public media interviews, is not a legitimate basis to excuse a court-ordered appearance.

Finally, it fails as a matter of consistency because a defendant cannot selectively engage with the judicial process – appearing

---

[3] James Queally, "He Was Willing to Testify Against the Cartel. ICE Got to Him First," L.A. Times, Apr. 5, 2026, available at https://www.latimes.com/california/story/2026-04-05/ice-los-angeles-drug-trafficking-witness-deported

12

through counsel to file sentencing memoranda, submitting character letters, seeking departures and variances – while claiming that personal danger prevents him from doing the one thing the Court actually requires: showing up. And it fails with particular force here, where the government offered to assist with the very transportation that Defendant's counsel complained was unavailable. (Apr. 16, 2026 Tr. at 5:19-6:1.) If Defendant's absence were truly the product of circumstance rather than choice, that offer would have been accepted. It was not. Participation in these proceedings is not something a defendant may curate to include only the parts that benefit him. The Plea Agreement required that Defendant appear. The Court ordered him to appear. The government offered to help him appear. Defense counsel represented that he would appear. He did not appear. That is the beginning and end of the voluntariness inquiry.

The Court should find that Defendant's absence from the April 16, 2026 sentencing hearing was voluntary within the meaning of Rule 43(c)(1)(B), and that sentencing may proceed in absentia.

**IV.   DEFENDANT HAS MATERIALLY BREACHED THE PLEA AGREEMENT**

Plea agreements are contracts, and courts apply contract principles in interpreting and enforcing them. United States v. De la Fuente, 8 F.3d 1333, 1337 (9th Cir. 1993). Where a defendant breaches, the government is entitled to be relieved of its obligations. The government bears the burden of proving breach by a preponderance of the evidence. United States v. Zucker, 161 F.3d 586, 589 (9th Cir. 1998). That burden is easily met here – twice over.

The Plea Agreement provides that "all of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach," and that upon a court finding of breach,

13

"the USAO will be relieved of all its obligations under this agreement." (Dkt. 95 ¶ 26.) The government declares breach on two independent grounds.[4] Either is sufficient. Together, they describe a defendant who treated his plea agreement as a non-binding commitment — a one-way instrument — enforceable against the government, optional for him.

### A.    Non-Appearance (Plea Agreement ¶ 2(d))

Paragraph 2(d) required Defendant to "appear for all court appearances, surrender as ordered for the service of the sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter." (Dkt. 95 ¶ 2(d).) The obligation is unambiguous. It contains no exception for deportation, no carve-out for safety concerns, no escape valve of any kind. Defendant signed it knowing his immigration status. The plea agreement expressly acknowledged the "virtual certainty" of his removal and imposed no limitation on his appearance obligation as a result. (Id. ¶ 7.) He agreed to appear. He agreed in writing. (Id.) He agreed in open court. (Dkt. 99.) He recently agreed again through counsel in February of 2026. (Dkt. 481 at 3, ¶ 4.)

He did not appear.

As established in Section III above, that non-appearance was voluntary. The Court's finding under Rule 43(c)(1)(B) simultaneously resolves this breach ground: a voluntary failure to appear at a required court proceeding is, without more, a knowing violation of

---

[4] The government reserves the right to oppose any cross-motion by Defendant asserting breach by the government, and to respond to any argument that the government's conduct relieved Defendant of his obligations under the Plea Agreement. (Dkt. 95.) Those arguments were raised, litigated, and rejected in prior proceedings. (Dkts. 478, 489.) They are not revived by this motion.

14

Paragraph 2(d). No further analysis is required. The same facts that authorize sentencing in absentia establish the first ground for breach.

**B.    Irreconcilable Untruthfulness (Plea Agreement ¶¶ 2(g) and 2(f))**

The second breach arises from a dilemma of Defendant's own making – one from which he cannot escape regardless of which way it is resolved.

Paragraph 2(g) required Defendant to "be truthful at all times with the United States Probation and Pretrial Services Office and the Court." (Dkt. 95 ¶ 2(g).) Paragraph 2(f) required him to "not commit any crime." A violation of 18 U.S.C. § 1001 – which prohibits knowingly and willfully making materially false statements in any matter within the jurisdiction of the executive branch and carries a maximum term of five years' imprisonment, squarely falls within that provision. A knowing material falsehood made to federal law enforcement officers – the very context in which truth is not merely expected but is the foundational premise of the interaction – is precisely the kind of crime Paragraph 2(f) was designed to prohibit.

Defendant gave two materially inconsistent accounts of his offense conduct to two separate arms of the federal government. On March 23, 2022, under proffer, with his own counsel present, he told federal agents and a federal prosecutor the following about the instant offense: that he knew narcotics would be in the vehicle before he agreed to proceed; that he personally arranged the use of the garage; that he drove with his co-conspirator to escort the trap vehicle to the off-load location; that he purchased tools at O'Reilly Auto Parts to open the hidden compartment; and that he pressed

15

forward despite believing law enforcement was surveilling him. (Ex. 2 ¶¶ 4-7.) Regarding his 2019 conduct, he described a lengthy, two-month trafficking enterprise involving five to six deliveries at approximately $1,000 per run. (Ex. 2 ¶ 9.)

On February 26, 2026, during his presentence interview with the United States Probation Office, Defendant described the same conduct as the act of a passive participant who "realized it was a drug deal, and continued moving forward." (RPSR ¶ 21.) The garage arrangement was gone. The escorted vehicle narrative disappeared. The tool purchase vanished. The continuation despite suspected surveillance was nowhere to be found. His 2019 conduct was similarly minimized. What remained was a portrait designed to elicit a favorable sentencing recommendation, stripped of every detail that implicated knowing, deliberate, and organized participation.

Those two accounts cannot both be true. The government does not need to resolve which of them is false. It does not matter. The structure of the dilemma does the work:

If the probation account is false, Defendant violated Paragraph 2(g) by providing a materially false account to the Probation Office – the very office whose assessment this Court relies upon in fashioning a sentence. A defendant who lies to probation to obtain a more favorable sentencing recommendation is doing precisely what Paragraph 2(g) was designed to prevent.

If the proffer account is false, Defendant made materially false statements to federal agents and a federal prosecutor in violation of 18 U.S.C. § 1001 and Paragraph 2(f). The materiality requirement is satisfied: the proffer statements went directly to Defendant's role, knowledge, and culpability in the instant offense – facts central to

16

any sentencing disposition and to the government's assessment of his cooperation. See United States v. Gaudin, 515 U.S. 506, 509 (1995) (a statement is material if it has the natural tendency to influence or is capable of influencing the decision-making body to which it is addressed). That standard is easily met here. A defendant's prior knowledge that narcotics would be in the vehicle – rather than a mid-stream realization after the fact – directly affects the Probation Office's assessment of his culpability, his role in the offense, and his eligibility for downward adjustments, including the minor role reduction he received. His personal arrangement for the use of the garage and his decision to press forward after suspecting law enforcement surveillance all bear directly on whether his conduct reflects the passive participation of a drug-addicted bystander or the deliberate, organized choices of a trusted operator in a transnational trafficking enterprise. Those are precisely the facts that the Probation Office weighed – or would have weighed – had it received a truthful account. A false statement that reshapes the factual predicate of a sentencing recommendation is, by definition, material.

One of those accounts must be a lie. Perhaps both. Under either horn of the dilemma, a material obligation of the Plea Agreement has been violated. The government need not pick a horn to prevail – the irreconcilability itself, established by a preponderance of the evidence, is sufficient. See United States v. Plascencia-Orozco, 852 F.3d 910, 920 (9th Cir. 2017). The Ninth Circuit has recognized that a breach finding requires only that the government demonstrate by a preponderance that the defendant knowingly failed to perform a material obligation. Zucker, 161 F.3d at 589. Where a defendant's own

17

statements are irreconcilably inconsistent – and where the more detailed, operationally specific, and corroborated account is the one given under proffer rather than the one now presented to this Court – that standard is met.

Defendant cannot escape to either side. If he now disavows the proffer account, he has made a false statement to federal agents. If he stands by the proffer account, he has lied to the Probation Office. The Plea Agreement's truthfulness obligation does not permit a defendant to choose which version of events suits him best at sentencing. It required him to tell the truth – one truth, consistent across proceedings. He did not.

### C. Fundamental Fairness Requires Relieving the Government of Its Sentencing Commitments.

The case for breach does not rest on a technicality. It rests on the most basic principle of contract enforcement: a party who repudiates his obligations cannot demand performance from the other side.

The government's sentencing commitments – most significantly, the recommendation cap – were not gifts. They were consideration, bargained for and exchanged for specific performance: appearance at all proceedings, and truthfulness with the Probation Office and the Court. That exchange was the essence of the agreement. Defendant has defaulted on both. He gave the Probation Office an account of his conduct that cannot be reconciled with what he said under proffer. He failed to appear for sentencing after his own counsel swore he would. And now he asks this Court – through the same counsel – to impose a sentence so far below the Guidelines sentence that it would be

18

remarkable for a first-time offender, let alone a career trafficker on his third serious conviction.

A defendant cannot selectively enforce a contract he has materially breached. United States v. Gonzalez-Sanchez, 825 F.2d 572, 578 (1st Cir. 1987) (defendant's breach relieved government of its obligations under plea agreement); United States v. Reardon, 787 F.2d 512, 516 (10th Cir. 1986) (same). To hold the government to the sentencing cap while Defendant walks away from the obligations that justified it would not be enforcement of the Plea Agreement. It would be its inversion.

The stakes of that inversion are not abstract. The United States Probation Office has recommended a sentence of 48 months – a figure that reflects an extraordinary departure downward from the applicable Guidelines of 100 to 125 months. That recommendation rests entirely on the account Defendant provided during his February 26, 2026 presentence interview: the passive participant who stumbled into a drug deal, the non-violent addict whose conduct was incidental rather than organized. That is the account Defendant provided to the Probation Office. It is also, as set forth above, the account that is directly and materially contradicted by what he told federal agents under proffer in March 2022 – with his own counsel present.

The 48-month recommendation is the mathematical product of Defendant's version of events. If that version is false – and the proffer record indicates that it clearly is – then the recommendation is not mitigation. It is the return on an investment in misrepresentation. The Court is being asked to sentence a three-time methamphetamine trafficker to a minimal sentence on the basis of a narrative that his own prior statements undermine. That is precisely

why a breach of the plea agreement is not merely appropriate relief – it is necessary relief.

The government has honored every obligation it assumed under the Plea Agreement. It has additionally legally effectuated Defendant's return to the United States for all required appearances. It has filed cooperation materials under seal. It did everything the Agreement required and more. Defendant did none of what he promised. The government is entitled to be relieved of its commitments and respectfully requests that this Court so find.

**V.    RELIEF REQUESTED**

For the foregoing reasons, the United States respectfully requests that this Court:

1. Find that Defendant's failure to appear at the April 16, 2026 sentencing hearing was voluntary within the meaning of Federal Rule of Criminal Procedure 43(c)(1)(B), and that sentencing may lawfully proceed in absentia;

2. Declare that Defendant has materially breached the Plea Agreement, (Dkt. 95), on two independent grounds: (a) voluntary failure to appear at a court proceeding in violation of Paragraph 2(d); and (b) providing irreconcilably inconsistent accounts of his offense conduct to the United States Probation Office and to federal law enforcement agents, in violation of Paragraph 2(g), Paragraph 2(f), or both; and

3. Relieve the government of all obligations under the Plea Agreement pursuant to Paragraph 26, including the sentencing recommendation cap, and re-set the matter for sentencing in absentia, including applicable revised sentencing positions.