IAN WALLACH (SBN 237849)
THE LAW OFFICES OF IAN WALLACH, P.C.
5777 West Century Boulevard, Suite 750
Los Angeles, CA  90045
E-mail: iwallach@wallachlegal.com
Tel.:  (213) 375-0000
Fax.:  (213) 402-5516

*Attorney for Defendant*,
Javier Hernandez

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

|  |  |
|---|---|
| UNITED STATES OF AMERICA<br><br>                    Plaintiff,<br><br>v.<br><br>ESMERELDA GOMEZ (HERNANDEZ),<br><br>          Defendants. | Case No: 2:17-cr-00064-3-CAS<br><br>**DEFENDANT'S OPPOSITION TO GOVERNMENT'S MOTION FOR FINDING OF VOLUNTARY ABSENCE AND BREACH; RELATED MOTIONS**<br><br>Date:    April 14, 2026<br>Time:   12:00 PM<br>Ctrm:   8D<br><br>*Before Honorable Christina A. Snyder* |

MEMORANDUM

## I. THE GOVERNMENT HAS NOT ESTABLISHED A MATERIAL BREACH OF THE PLEA AGREEMENT

On December 23, 2025 the government stated its intent to move to declare the plea agreement breached should the defendant not appear for sentencing. (12/23/2025 e-mail of AUSA LeCedre) (annexed to the Declaration of Ian Wallach ("Wallach Dec."), ¶ 2, Ex. A). The government now so moves, asserting two arguments: First, that representations made to a United States Probation Officer ("USPO") during a Presentence Investigation Report ("PSR") interview that took place over two months later, on February 26, 2026[1], were materially false; and Second, that defendant's failure to appear at sentencing following his deportation constitutes a material breach.

Neither argument has merit.

### a. The Government Has Not Established A Materially False Statement To A Federal Officer

The government does not point to a representation made by the defendant that the government claims is materially false. Instead, the government describes statements made during a proffer session with federal agents where the defendant, in great detail, described his illegal conduct and that of the codefendants. (Government's Request For Finding Of Voluntary Absence, Motion For Declaration Of Breach ("Gov't. Motion") [ECF 512] at 7-8. The government then refers to a statement contained in the PSR where the defendant acknowledged he became aware that his involvement concerned a drug deal and continued moving forward. The government argues that the *omission* of the more detailed acts relayed during the March 23, 2022 proffer amounts to a material misrepresentation. *Id.* This argument is incorrect. No materially false statements are identified.

---

[1] The PSR mentions two interviews – one that took place on January 6, 2022 and one that took place on February 26, 2026. (PSR, ¶ 21) [ECF 485]. However, the PSR erroneously listed the date of the first interview as January 6, 2026. (*see* prior PSR, ¶ 61 [ECF 101]).

The government identifies paragraph 2(g) of the plea agreement which requires the defendant "to be truthful at all times with the United States Probation Office and the Court" as the provision allegedly violated. ("Gov't. Motion at 6). Comparing a similar argument and provision of a plea agreement, the Ninth Circuit held that "information that is merely incomplete and not actually false is not a breach." *United States v. Packwood,* 848 F.2d 1009, 1012 (9th Cir. 1988). Here, the government fails to show any false statements that would justify declaring a breach.

Moreover, proffers and PSR interviews differ in scope and purpose. The March 23, 2022 proffer lasted many hours and focused exclusively on the criminal conduct. Defendant's participation was candid and honest. Subsequently the parties agreed to a 2-point minor role adjustment in (Plea Agreement, 8-9, fn. 1, 9) [ECF 95]). Cooperation credit was also expected.

By contrast, a PSR interview usually takes only $1 - 2$ hours to complete and focuses on assessing the defendant's life history, finances, mental and physical health, substance abuse issues, and other grounds for mitigation. The PSR interview incorporates a form provided to the defendant in advance of the interview that contains a small box where a defendant may comment on the criminal conduct at issue. The USPO usually asks a single question regarding the criminal conduct and a defendant frequently provides a one to two sentence response unless instructed not to by counsel. That is what happened here. There would be no reason to discuss the entirety of the criminal conduct during the PSR interview, no time to do so, and no space to provide a detailed account in the form provided to the defendant.[2]

---

[2] Additionally, a USPO has access to the same discovery and reports that the prosecutor does.  In this case, the USPO, a neutral party, did not find any false or inconsistent representations.

b.  The Government Has Not Established That Defendant's Absence Is Voluntary

i.  *Relevant Facts*

Prior to the criminal trial in which the defendant was to testify, and without notice to the Court or defense, the defendant was detained by the U.S. Immigration and Customs Enforcement Agency and held in Adelanto ICE Processing Center. (PSR, ¶ 64).

Previously, but after defendant proffered and his statements and participation were published to the co-defendants, the defendant received threats in the form of anonymous text messages that contained photos of a mutilated child and a beaten man along with the names of the defendant's family members. (Declaration Of JohnPaul Lecedre dated April 14, 2026, Ex. 5).

During his period of detention at the Adelanto ICE Processing Center in Adelanto, California, the defendant was held in the general population section. Given his published cooperation and the resulting threats he received, he feared for his life and safety and had a legitimate reason for such fear. Defense counsel notified the government that the defendant was in danger on several occasions.  (*see* e-mails dated February 19, 2025 and February 25, 2025 from defense counsel to the government (Wallach Dec., ¶ 3, Ex. B (collectively)). The government took no actions in response.

On February 26, 2025, the government informed defense counsel of its ability to seek a "temporary release or stay of removal to solve the immediate issue. (*see* February 26, 2025 email from the government to defense counsel. (Wallach Dec., ¶ 4, Ex. C)). However, the government did not do so. Under prior administrations, such stays were commonplace in order to avoid deporting cooperating witnesses with criminal matters pending.[3]

---

[3] See Queally, James, "He was willing to testify against the cartel— but ICE got to him first", L.A. Times, April 5, 2026 (discussing the frequency of such stays and quoting a former DOJ prosecutor stating "[i]t's something that needs to be coordinated on a human level and that gets more complicated

The government could have moved this Court to advance the sentencing date prior to defendant's deportation but did not.

The government could have brought the defendant to this Court pursuant to a writ and provided notice of the availability of parole to re-enter the United States and instructions on how to effectuate such parole to the defendant, but did not.

The defendant was then deported to Tijuana on March 24, 2025.

During a hearing on April 16, 2026, the government acknowledged that it had "assets" in Mexico who could assist with the defendant's return, upon request of defense counsel. The government acknowledged that it had resources available to assist Defendant in Mexico, including "DEA assets." (Apr. 16, 2026 Hr'g Tr. at 17:15–20 [ECF 508]). The government could have arranged for such assets to meet the defendant in Tijuana at the end of the drive used to deport the defendant to make arrangements for any future return, but did not.

On May 2, 2025, five weeks after the government deported the defendant to Mexico, the government determined that the defendant should return to testify at trial. The government sent an email to defense counsel requesting information as to which port of entry defendant would use to return for trial, the address and phone number he would use while in the United States, what his source of financial support during his stay in the United States would be, and where he lived prior to the deportation. (*see* May 2, 2025 email from the government to defense counsel. (Wallach Dec., ¶ 5, Ex. D)).

On September 29, 2025, the government provided defense counsel with an approval for Significant Public Benefit Parole ("SPBP"), authorizing the defendant to lawfully enter the United States for a limited period. (Wallach Dec., ¶ 6, Ex. E). The government represented that it "remain[ed] available… to effectuate his entry." (*Id.*). However, this authorization was not self-executing. It required coordination with a

_____

when you have attrition of people who worked for DHS and DOJ cfor a long time," she said, referring to the mass exodus of federal workers since Trump returned to office").

controlling agent, entry through a designated port of entry, and compliance with law enforcement supervision requirements. (*Id*.). The defendant, who was living in Mexico under an assumed identity, communicated with counsel only through WhatsApp and did not have access to a printer or the ability to receive or present formal documentation. The government did not provide any mechanism to bridge these practical barriers or to coordinate the defendant's return.

The defendant is not present for sentencing.

### ii.   Legal Standard

The government asserts an incorrect legal standard – one that is narrow and limited to whether a defendant knew of proceedings and chose not to attend. (Gov't. Motion at 9). In support, the government relies on *U.S. v. Ornelas*, 828 F. 3d. 1018 (9th Cir. 2016); *Hays v. Arave*, 977 F. 2d. 475 (9th Cir. 1992) (*overruled on other grounds in Rice v. Wood*, 77 F.3d 1138 (9th Cir. 1996); and *Rice v. Wood*, 77 F.3d 1138 (9th Cir. 1996). (Gov't Motion at 9).

*Ornelas* is inapplicable as it concerns a case where a defendant voluntarily absconded. *Ornelas*, 828 F. 3d. at 1020. *Rice* is inapplicable as it addresses the less substantial right to be present when a jury returns a verdict. *Rice,* 77 F.3d at 1141.

*Hays*, however, is on point. In *Hays*, a government frustrated a defendant's capacity to appear for sentencing and the Ninth Circuit examined whether subsequent steps undertaken by the government provided a sufficient remedy to proceed with sentencing *in abstentia*. In *Hays*, a defendant in a California action who had pled guilty was then, prior to sentencing, delivered by the State of California to Idaho pursuant to an extradition request. California commenced proceedings to return the defendant for sentencing but ultimately failed to complete or reinstate proceedings and instead sought (successfully) to have the defendant sentenced *in abstentia*. *Hays*, 977 F. 2d. at 477.

The Ninth Circuit listed the remedies that were available to California but not implemented – sentencing could have been advanced by the government prior to

defendant being removed; California could have timely moved for the defendant's return; and California could have re-implemented proceedings to have defendant returned. The *Hays* Court held that "California clearly failed to exercise reasonable diligence despite the ready availability of means which would have secured Hays' presence at his sentencing." *Id.* at 488. Accordingly, the Ninth Circuit found the *in abstentia* sentence to be unconstitutional. *Id*.

In *Hays*, the 9th Circuit held that "Unconstitutional *in absentia* sentencing constitutes a structural defect in the process" and are therefore excluded from the "harmless error" standard and "cannot be permitted to stand." *Hays*, 977 F. 2d. at 482.

*Hays* makes clear that if a defendant's absence from sentencing arises from the government's action, it cannot be deemed a voluntary absence.

Furthermore, the standard proffered by the government fails to include the caselaw related to the burden of establishing voluntary absence. Rule 43 permits sentencing *in absentia* only where the defendant's absence is voluntary. A district court should indulge every reasonable inference against a finding of voluntary absence. *United States v. Achbani*, 507 F.3d 598, 601-02 (7th Cir. 2007) (citing *United States v. Watkins,* 983 F.2d 1413, 1419 (7th Cir. 1993)). Before proceeding, the district court must explore on the record any "serious questions" raised regarding whether the defendant's absence was knowing and voluntary. (*Id.*) (citing *Watkins,* 983 F.2d at 1419); *United States v. St. James*, 415 F.3d 800, 804 (8th Cir. 2005); *United States v. Davis*, 61 F.3d 291, 302 (5th Cir. 1995)).  "For example, a defendant taken into legal custody is not voluntarily absent, *see Larson v. Tansy*, 911 F.2d 392, 397 (10th Cir. 1990); nor is a defendant who has been hospitalized due to illness, *see United States v. Novaton*, 271 F.3d 968, 996-97 (11th Cir. 2001)." *Achbani*, 507 F.3d at 602.

Accordingly, the appropriate inquiry is whether, while indulging every reasonable inference *against* a finding of voluntary absence, the government is responsible for it. If so, the absence is not voluntary.

MEMORANDUM OF LAW

Where the record raises a substantial question as to whether the defendant's absence is voluntary, the Court should resolve that question by indulging every reasonable inference against a finding of voluntary absence. The Court must then determine, based on the record as a whole, whether the defendant's absence reflects a knowing and voluntary waiver of the right to be present. *See Ornelas*, 828 F.3d at 1023.

Here, Defendant has made that showing. The record raises substantial and well-documented questions regarding whether his absence is voluntary. The government deported the defendant. Prior to doing so, the government did not move to advance sentencing or effectuate a hearing where the government or this Court could give notice to the defendant of the means and manner to return and provide defendant with the documentation necessary to do so. The government could have connected the defendant with its assets in Mexico at the time of his removal so that they could effectuate the defendant's return, but did not.

Instead, over a month after deporting the defendant to Mexico over the defense's objections, the government delegated the duty of effectuating the defendant's return to defense counsel.

The question before the Court is whether the government can convert an involuntary absence into a voluntary one by obtaining authorization for the defendant's return while leaving to defense counsel the responsibility for effectuating that return.

It cannot do so. At a minimum, the record presents substantial questions regarding whether the defendant's absence is voluntary, which should be resolved against a finding of voluntary absence. *See Achbani*, 507 F.3d at 601–02.

MEMORANDUM OF LAW

### iii. Analysis

#### 1. The government's act of deporting the defendant rendered his absence from the court's jurisdiction involuntary.

In *Hays*, *supra*, the Ninth Circuit established that a defendant who is removed by a government from the Court's jurisdiction, and when the government fails to effectuate that defendant's return, any resulting absence is not voluntary. *Hays*, 977 F. 2d. at 488.

#### 2. The government failed to utilize available avenues of providing a meaningful path for the defendant to appear to testify at trial or appear at sentencing.

The government had the means to secure the defendant's attendance at trial or sentencing (without delegating the task of returning him to the United States to defense counsel). These included (1) its ability to stay defendant's deportation; (2) its capacity to move this Court to advance sentencing to precede the deportation; (3) its capacity to bring the defendant to this Court by way of a writ to provide notice of the availability of parole and explain how it is to be effectuated; and (4) its capacity to have its assets meet the defendant at the end of the drive to Tijuana used to deport the defendant to make arrangements for his future return. As in *Hays,* the means to secure the defendant's presence were available but not used. This inaction is akin to that which occurred in *Hays*, *supra*, which the Ninth Circuit relied on when determining that the subsequent *in abstentia* sentencing was unconstitutional. 977 F. 2d. at 488. Providing a parole authorization that required coordinated law enforcement execution, without facilitating that execution, did not create a meaningful path for the defendant's return. Authorization to return is not the same as the ability to return. A theoretical pathway—dependent on coordination with law enforcement, documentation, and physical presentation at a port of entry—does not establish that appearance was realistically possible under the defendant's circumstances.

### 3. Delegating tasks associated with the return of defendant to defense counsel is impermissible.

Under normal circumstances, a deported defendant would have no reason to continue to communicate with their probation officer or their defense counsel, as they would have no reason to believe they would be able to return for any Court proceedings or that the government – having deported the defendant – desired that defendant to return.

But that is not the case with this defendant. Mr. Hernandez spent the majority of his adult life as a methamphetamine addict. But upon his arrest in this case, he underwent a substantial transformation. Using the support means provided by the Office of Probation and Pre-Trial services to his newfound sobriety, the defendant has stopped using drugs completely. (PSR, ¶ 93). He performed perfectly while on pre-trial supervision. (PSR, ¶ 14 ("Pretrial services records indicate the defendant complied with all Court ordered conditions of release prior to his deportation")). "For the four years prior to his deportation, Iniguez had straightened out his life, completed a certification program, maintained employment, and took care of his family" (PSR, ¶ 78(b). He maintained strong relationships with his wife and his two sons, both of whom are actively serving in the United States military. The Department of Probation and Pre-Trial Services provided him the tools to allow the defendant to overcome his addiction and begin to live a lawful productive existence.

Because of his relationship with his probation officer and his defense counsel he maintained contact with each while living in Mexico under an assumed name. This may ultimately prove to his detriment, as at issue is whether this Court may find that the Government rendered his post-deportation absence voluntary by communicating return information to defense counsel.

MEMORANDUM OF LAW

*a. The government cannot force defense counsel to select between competing ethical obligations.*

In the present case, when the defendant was detained and housed at the Adelanto ICE Processing Center, he was kept in the General Population section. In light of defendant's cooperation in the criminal trial, the likelihood of a connection between the drugs supplied in that matter and Mexican organized crime[4], and the receipt of a disturbing communication containing photographs of dismembered children alongside the names of his families' members, defense counsel had reasonable well-founded concern for defendant's safety and a legitimate basis to believe that such risks would resume if returned to custody of the United States, unless the government could provide an assurance that he would not be housed in the exposed manner the government housed the defendant while he was detained at the Adelanto ICE Processing Center. Defense counsel conveyed these concerns to the government.

In response, the government stated that it had no duty whatsoever to protect cooperating witnesses from harm from third parties. The government argued:

> It is well-settled that individuals who choose to cooperate do so voluntarily, often in exchange for negotiated benefits such as sentencing considerations. Cooperation inherently involves risks, particularly for individuals involved in criminal enterprises. Absent an affirmative agreement or evidence that the state intentionally and affirmatively increased the level of danger, the government is not liable for the normal danger posed to him by third parties. *Kennedy v. City of Ridgefield,* 429 F.3d 1055, 1062-63 (9th Cir. 2006) (discussing the doctrine of state-created danger).

Government's Surreply To Motion To Dismiss dated April 28, 2025 at 5. Allowing the government to mandate defense counsel to assist with a process that could, in the defense counsel's subjective opinion, expose his or her client to a genuine risk of injury

---

[4] See Queally, James, "He was willing to testify against the cartel— but ICE got to him first", L.A. Times, April 5, 2026 ("Two former federal prosecutors interviewed for this article said nearly all drug smuggling from Mexico into the U.S. has some connection to Mexican organized crime").

or death, places that counsel in an untenable position and imposes an obligation that is unwarranted and in conflict with the  duty to act in the client's best interests.

> b. *Defense counsel cannot be compelled to be an agent or instrument of the government as such imposes an impermissible encroachment on the attorney-client relationship*

In *United States v. Cronic*, 466 U.S. 648, 656-57 (1984) the Supreme Court stated:

> [T]he adversarial process protected by the Sixth Amendment requires that the accused have "counsel acting in the role of an advocate." *Anders v. California*, 386 U.S. 738, 743 (1967). The right to the effective assistance of counsel is thus the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing. When a true adversarial criminal trial has been conducted -- even if defense counsel may have made demonstrable errors -- the kind of testing envisioned by the Sixth Amendment has occurred. But if the process loses its character as a confrontation between adversaries, the constitutional guarantee is violated.

*Cronic* enforces the principle that it is not the defense counsel's obligation to participate in remedying any error that may arise from the government's act of deporting a defendant with proceedings pending. This is the government's problem to remedy, not one of the defense counsel.

Furthermore, if a defense counsel is compelled by the government to instruct the client that – in order to satisfy the *government's* objectives arising from an error (such as deporting a client with proceedings pending) – the client must do A, B, or C – such instructions are bound to make the client question the attorney's allegiance. This would further impinge upon the attorney-client relationship and this Court should determine

MEMORANDUM OF LAW

that any such act by the government is an impermissible violation of a defendant's right to counsel under the Sixth Amendment.

      c.  The Government's Characterization Of The Defendant Is Not Relevant To The Questions Of Whether A Material Breach Existed Justifying Declaring A Breach Or Whether Defendant's Absence Is Voluntary

Prior to asserting its legal theories, the government engages in a two-page discussion of the defendant's criminal history, beginning with a possession of a loaded gun conviction from 26 years ago, (when the defendant was 20 years old) and a DUI and knife possession conviction from 21 years ago (when defendant was 25.) .

The government does not state how this information is relevant to the legal issues before the Court – (a) whether a breach of the plea agreement occurred; and (2) whether the defendant's absence is voluntary.

Absent a valid basis for consideration, this section should be disregarded.

II.    RESPONSE TO GOVERNMENT'S REPLY TO DEFENDANT'S SENTENCING MEMO

During the hearing on April 16, 2026, the defense brought to the Court's attention representations that the defense perceived as flawed in the government's submission concerning the defendant's involvement in the instant offense. This was not well-received by the Court. Apr. 16, 2026 Hr'g Tr. 9:2 – 11:6. The defense is hesitant to address the representations at issue as it does not wish to raise the Court's ire, but is compelled to do so to preserve the record, protect the client's interests and ensure the Court relies on accurate facts when fashioning the sentence.

First, the government asserts:

> Defendant carried out the aforementioned conduct at the direction of another co-conspirator, Esmeralda Gomez ("EG"), who would recruit and hire drivers to travel to Mexico, pick up vehicles loaded with controlled substances, and drive the vehicles to the United States, where Defendant and co-conspirator 1 would retrieve the drugs.

There is no evidence supporting this assertion. Per the report prepared by Special Agent Ricardo L Martoccia and submitted as Exhibit 3 to the declaration in support of the government's papers, co-defendant Martinez hired the defendant to remove a stereo in exchange for $100. When co-defendant Martinez insisted on removing the stereo in an isolated location, the defendant concededly deduced that drugs were involved and agreed to continue for an additional $100. (Declaration Of JohnPaul Lecedre dated April 14, 2026, Ex. 3). The report does not contain any evidence that the defendant knew Esmeralda Gomez or of her. The statement that he was acting at Esmeralda Gomez' direction implies a connection to the leader of the organization and a greater level of culpability. But no such evidence exists.

The government further states:

> …this was a coordinated, cross-border narcotics operation connected to a Mexican supply chain, and Defendant was the man on the ground, trusted to receive and unload wholesale quantities of 100% pure methamphetamine.

The report prepared by Special Agent Martoccia contains no evidence suggesting that the defendant had any connection to a "Mexican supply chain" or that he was the "*man on the ground*" or that he was a trusted member of a conspiracy or that he knew either the type or purity of the drugs he was to be paid $200 to remove from the stereo console. (Declaration Of JohnPaul Lecedre dated April 14, 2026, Ex. 3).

The defendant's conduct at issue is consistent with the minor role adjustment he received. The defense asks that this Court evaluate the facts as recorded by Special Agent Martoccia and as contained in the factual basis to the plea agreement and reject inferences and characterizations that are not supported by the record. This concern is heightened when the representations at issue imply a greater level of culpability than that established by the record.

MEMORANDUM OF LAW

III.   RENEWAL OF MOTION TO DISMISS FOR OUTRAGOUS GOVERNMENT CONDUCT

The defense acknowledges that the Court has previously denied this motion. The motion is renewed here briefly to account for subsequent acts and for consideration of the acts cumulatively and for purposes of preservation.

During the course of this litigation:

1. The government deported the defendant prior to trial and sentencing.

2. In opposing the defendant's prior motion to dismiss, the government asserted that defense counsel had attempted to engage in alien smuggling (which defense counsel denies). (Supplemental Declaration Of Johnpaul Lecedre dated March 25, 2025 at 1:20 – 2:2). That allegation was raised in connection with the government's decision to deport the defendant while proceedings were ongoing — an issue to which it bears no relevance. Its inclusion injected a collateral accusation concerning counsel into the litigation rather than addressing the governing legal standards and risks diverting the Court's analysis from the issues properly before it.

3. When defense counsel refused to accommodate the government's demands regarding performing tasks essential to the government's effort to return the defendant to the United States, the government (a) moved to have defense counsel removed as defendant's attorney, claiming the government was acting in the defendant's best interests and on his behalf; and (b) sought to invoke the stand-by counsel process to have additional, and potentially more compliant, counsel appointed. Government's Opposed Ex Parte Application For Inquiry At Status Conference Regarding Representation Issues dated July 21, 2025;

4. The defendant provided valuable information to the government such that it continued the criminal action against the co-defendants. The prior prosecutor on the matter acknowledges that "Hernandez's testimony would have been

15

MEMORANDUM OF LAW

important."[5] The essential nature and value of that information was evidenced by the resulting acquittal of the co-defendants that occurred without the defendant's testimony. Having not prevailed at trial, the Government refused to file a 5K.1 motion and represented that the defendant provided no assistance of value at all.

5. The government deported the defendant and now relies on that absence from proceedings to declare the plea agreement breached and seek a more severe sentence.

Considered individually, these events may not warrant dismissal; considered together, they do.

IV.    THE COURT SHOULD CONSIDER THE IMPACT OF THE DEPORTATION AND SUBSEQUENT PROCEEDINGS HAD ON THE DEFENDANT WHEN FASHIONING THE SENTENCE.

The Court's obligation under 18 U.S.C. § 3553(a) is to impose a sentence that is sufficient, but not greater than necessary, to achieve the purposes of sentencing. In doing so, the Court may consider the full circumstances of the defendant's confinement and the manner in which this case has unfolded.

At its outset, this case provided the defendant with an opportunity to change the course of his life. The Department of Probation and Pre-Trial Services provided him with the resources necessary to overcome his addiction. He rebuilt relationships with his sons (one of whom served in the United States Marine Corps and the other who is currently serving), restored his marriage of over 25 years, maintained full-time employment, and complied fully with the conditions of supervision.

The defendant chose to cooperate with the government. He met with agents and the prior AUSA and provided valuable information, including critical evidence against co-defendant Quijada. After his cooperation was disclosed, he received a message

---

[5] See Queally, James, "He was willing to testify against the cartel— but ICE got to him first", L.A. Times, April 5, 2026 (statement of former AUSA J. Shemitz).

containing images of a brutally mutilated child and young adult, along with the names of his family members. No prosecutor or agent ever indicated that the threat was not credible. He nevertheless agreed to proceed and testify.

While assisting the government, the defendant believed—for the first time—that he was doing everything right.

Then, without notice to the defendant, the Court, or counsel, and with the reasonable expectation that removal would occur after proceedings concluded, the defendant was detained by ICE and placed in general population despite the known risks arising from his cooperation. His requests for assistance, based on a reasonable fear for his safety, went unanswered. He was subsequently transported to Tijuana—a city in a country with which he has little connection.

He now lives in difficult and unstable conditions under an assumed identity. He has not seen his sons since February 2025 or his wife since his deportation. The posture of the case shifted significantly, with the government now seeking a substantially more severe sentence.

Probation's recommendation is a neutral and reasoned assessment of the appropriate sentence. The Court may also consider the defendant's cooperation and the credible risks that resulted from that cooperation as recognized bases for a downward variance. *See United States v. Tadio*, 663 F.3d 1042, 1044 (9th Cir. 2011).

The Court should also consider the five weeks the defendant spent in custody at Adelanto and the legitimate and substantial fear he experienced during that time. A sentencing court may consider both the duration and the harshness of confinement. *United States v. Pressley*, 345 F.3d 1205, 1219 (11th Cir. 2003); *see also United States v. Spano*, 476 F.3d 476, 479 (7th Cir. 2007).

The defendant accepted responsibility, achieved meaningful rehabilitation, cooperated with the government despite significant risk, and experienced credible threats as a result of that cooperation. When these factors are considered alongside the conditions of his detention and the Probation Office's recommendation, a sentence of

fifteen months' imprisonment is sufficient but not greater than necessary to satisfy the purposes of § 3553(a)(2).

Respectfully Submitted,

LAW OFFICE OF IAN WALLACH, PC

Dated: May 1, 2026

IAN WALLACH
*Attorney for Defendant*,
Javier Hernandez

MEMORANDUM OF LAW

DECLARATION

I, Ian Wallach, hereby state and swear as follows:

1. I am counsel to Defendant Javier Hernandez in this action, having been appointed under the CJA on December 8, 2020. [ECF 67].

2. Attached as Exhibit A is a true and correct copy of an email from AUSA LeCedre to myself dated December 23, 2025.

3. Attached as Exhibit B is a true and correct copy of an email from myself to AUSA Shemitz and AUSA LeCedre dated February 19, 2025.

4. Attached as Exhibit C is a true and correct copy of an email from AUSA LeCedre to myself dated February 26, 2025.

5. Attached as Exhibit D is a true and correct copy of an email from AUSA LeCedre to myself dated May 2, 2025.

6. Attached as Exhibit E is a true and correct copy of an email from AUSA LeCedre to myself dated September 29, 2025 and the attachment that accompanied it.

7. The defendant is living under an assumed name in Mexico and is employed for a nominal salary. The defendant does not have a printer or access to one.

Dated: May 1, 2026

_____
Ian Wallach

19
DECLARATION

A

**From:** **Lecedre, Johnpaul (USACAC)** Johnpaul.Lecedre@usdoj.gov
**Subject:** Notice of Government's Intent, re: Breach
**Date:** December 23, 2025 at 2:01 PM
**To:** Ian Wallach iwallach@wallachlegal.com

Mr. Wallach—

I'm sure at this point you've had a chance to review the Court's ruling denying your various motions. The ruling also addressed / confirmed the defendant's and your obligations at the sentencing hearing in February. As with previous hearings, Mr. Hernandez will be afforded CBP parole to attend in person.

I'm notifying you that should Mr. Hernandez fail to appear in person on the sentencing date, I intend to declare the plea agreement breached and seek a finding from the Court pursuant to para 26 et seq of the plea agreement. While you've indicated in previous hearings that you would seek withdraw of the plea in that circumstance, the plain terms of the agreement foreclose that. You're welcome to file whatever you see fit, and I'll respond accordingly.

If/when the Court finds that a breach has occurred, it would relieve the government of its obligations under the plea agreement, including the low-end recommendation, any adjustments (including minor role), and several other provisions potentially beneficial to your client. I will concurrently request that the court re-set an in absentia sentencing date, in order to allow the government to file an updated sentencing memorandum.

Please let me know if you have any questions. Thank you.

**JohnPaul LeCedre | Assistant United States Attorney**
United States Attorney's Office | Central District of California
312 North Spring Street, Suite 1400 | Los Angeles, California 90012
T: 213.894.4447| F: 213.894.0141 | **johnpaul.lecedre@usdoj.gov**

B

**From:** **Ian Wallach** ian@wallachlegal.com
**Subject:** 2:17cr00064(3)CAS: U.S.A. v.Javier Hernandez aka Francisco Iniguez -- URGENT. CLIENT IN DANGER
**Date:** February 19, 2025 at 1:30 PM
**To:** Shemitz Julie Julie.Shemitz@usdoj.gov, Johnpaul.Lecedre@usdoj.gov

JP (or Julie),

Please call me immediately if you can. ███████. Mr. Hernandez has been detained by ICE and I fear he is in real danger.

Ian
The Law Offices of Ian Wallach, P.C.
5777 West Century Boulevard, Suite 750
Los Angeles, CA 90045
T: 213.375.0000 · F: 213.402.5516
www.wallachlegal.com



**From:** **Ian Wallach** iwallach@wallachlegal.com
**Subject:** Any News or Help On Javier Hernandez
**Date:** February 25, 2025 at 9:12 PM
**To:** Johnpaul Lecedre Johnpaul.lecedre@usdoj.gov

Hey JP —

I know Javier can be visited and will try to arrange one for week after next.  We should take asap.  Without him (a) I get to worry about his safety; and (b) I'm fairly certain that one of the co-defendant (the one represented by John Acquilina) gets dismissed.

And I really am concerned for him.

My cell is ▮▮▮▮▮▮▮▮

Best,

Ian
The Law Offices of Ian Wallach, P.C.
5777 West Century Boulevard, Suite 750
Los Angeles, CA  90045
T: 213.375.0000  ·  F: 213.402.5516
www.wallachlegal.com

C

**From:** Lecedre, Johnpaul (USACAC) Johnpaul.Lecedre@usdoj.gov
**Subject:** RE: [EXTERNAL] Any News or Help On Javier Hernandez
**Date:** February 26, 2025 at 10:43 AM
**To:** Ian Wallach iwallach@wallachlegal.com

LJ

Hi Ian—

I'm reaching out to some contacts in the office who've dealt with this before. Do you have specific contacts for where he's at? I think there may be some value in requesting a temporary release or stay of removal to solve the immediate issue.

As a state prosecutor, I used to use S-Visas all the time for my material witnesses. You've never dealt with that before?

JP

**JohnPaul LeCedre | Assistant United States Attorney**
United States Attorney's Office | Central District of California
312 North Spring Street, Suite 1400 | Los Angeles, California 90012
T: 213.894.4447| F: 213.894.0141 | **johnpaul.lecedre@usdoj.gov**

---

**From:** Ian Wallach <iwallach@wallachlegal.com>
**Sent:** Tuesday, February 25, 2025 9:13 PM
**To:** Lecedre, Johnpaul (USACAC) <JLecedre@usa.doj.gov>
**Subject:** [EXTERNAL] Any News or Help On Javier Hernandez

Hey JP —

I know Javier can be visited and will try to arrange one for week after next.  We should take asap.  Without him (a) I get to worry about his safety; and (b) I'm fairly certain that one of the co-defendant (the one represented by John Acquilina) gets dismissed.


And I really am concerned for him.

My cell is ███████████

Best,

Ian
The Law Offices of Ian Wallach, P.C.
5777 West Century Boulevard, Suite 750
Los Angeles, CA  90045
T: 213.375.0000  ·  F: 213.402.5516
www.wallachlegal.com

D

**From:** **Lecedre, Johnpaul (USACAC)** Johnpaul.Lecedre@usdoj.gov
**Subject:** CPB Parole
**Date:** May 2, 2025 at 1:27 PM
**To:** Ian Wallach iwallach@wallachlegal.com

Mr. Wallach—

Good afternoon. I'm working on the CBP Parole process with the case agent, and I'm going to need some additional information (such as port of entry, address once he gets here, family members, etc), specifically from the forms / Case Agent:

1. Can you have INIGUEZ provide the port of entry he plans to use to enter the US.
2. Can you have INIGUEZ provide an address and telephone he will use while here.
3. How will INIGUEZ be financially supported while here. Will he have a job or live off family members etc?
4. What city/state was he located in when he was recently deported

I can look up some of this, are you able/Mr. Hernandez (Iniguez) to provide some of this information to assist with the process? Thank you.

**JohnPaul LeCedre** | **Assistant United States Attorney**
United States Attorney's Office | Central District of California
312 North Spring Street, Suite 1400 | Los Angeles, California 90012
T: 213.894.4447| F: 213.894.0141 | **johnpaul.lecedre@usdoj.gov**

E

**From:** **Lecedre, Johnpaul (USACAC)** Johnpaul.Lecedre@usdoj.gov 📎
**Subject:** SPBP Approval for Javier Hernandez (Francisco Iniguez)
**Date:** September 29, 2025 at 2:04 PM
**To:** Ian Wallach iwallach@wallachlegal.com

Mr. Wallach—

Please find attached SPBP approval letter which authorizes your client to lawfully
enter the United States between now and October 13, 2025.

We remain available at his convenience to effectuate his entry. Please let me know if
you have any questions. Thank you.

**JohnPaul LeCedre | Assistant United States Attorney**
United States Attorney's Office | Central District of California
312 North Spring Street, Suite 1400 | Los Angeles, California 90012
T: 213.894.4447| F: 213.894.0141 | **johnpaul.lecedre@usdoj.gov**

**SPBP MTR Approval for
JAVIER INIGUEZ, Francis...**
196 KB



**Office of Operations Management**
*Confidential Source Section*
*Immigration Benefits Unit (OMIB)*

## MANDATORY TRACKING REQUIREMENTS

Date: 09/26/2025

Field Office: Los Angeles FD

Controlling Agent: Chaney Jr, Roger

Alien #: 076613013

CBP Record ID #: P1I66395000J01

ICM Record #: SPBP05635

Be advised that your request for an Advance Significant Public Benefit Parole (SPBP) has been authorized for the following individual. Subject may depart the United States for up to 30 days and the parole is valid for 1 day each entry into the United States. The subject will automatically revert into Deferred Action status upon re-entry. Parole is valid until 10/13/2025 .

### MULTIPLE ENTRIES

\*\*\*\*\*\***Name of Subject**: JAVIER INIGUEZ, Francisco    **Date of Birth:** 10/04/1978    \*\*\*\*\*\*

Subject's entry into the United States is limited to the San Ysidro, CA Port(s) of Entry.

**Requesting Controlling Agent must maintain close and consistent supervision during the authorized parole period and will take immediate and appropriate measures if the subject absconds. You are required to take the following steps and return this notice to OMIB Headquarters at DEA-SPBP@dea.gov as each of these events occurs (AM 6612.100 (G)(2)(a-d):**

1. When the alien arrives in the United States, you **must** fill in the date of arrival and email this form back to OMIB mailbox with a copy of their I-94. Arrival date of subject into the United States:_____

2. If the aliens' presence is still required beyond this extension period, you **must** request a new extension through DEA Headquarters. Once extension is granted, you must email a copy of the new I-94 to this office.

3. If the Controlling Agent changes, you **must** inform OMIB and complete a DEA-512c form, if applicable.

4. When the alien departs the U.S., you **must** fill in the date of departure point & flight number. Email this form back to OMIB. The alien departed the U.S. on _____ via/method _____ .

5. If the alien never entered the U.S., email this form to OMIB and circle #5 to cancel request.

6. If the alien absconds or you are unable to contact the alien, you **must** contact OMIB **immediately** and coordinate with your Homeland Security Investigation (HSI) Parole Coordinator to initiate removal proceedings.

7. Other: _____

*Controlling Agent's Signature*                                    *Date*

**This form must be updated and returned as soon as the alien arrives, departs, or any status changes, and no later than the expiration date of parole.**

### LAW ENFORCEMENT SENSITIVE

(Rev. 06/24/25)